**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

HOK BOEN LIONG,
*on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

              Plaintiff,

              v.

SAKE ASIAN RESTAURANT INC.,
       d/b/a SAKE ASIAN,
KUMO SUSHI 76 INC.,
       d/b/a KUMO,
WANG & LIN SAKE ASIAN INC.,
       d/b/a SAKE ASIAN MASSAPEQUA,
SAKURA 618 INC.,
       d/b/a SAKURA,
SUSHI YA HIBACHI INC.,
       d/b/a SASA HIBACHI,
and ZHENDONG LIU,

              Defendants.

---

Case No.:
**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**
Jury Trial Demanded

Plaintiff, HOK BOEN LIONG ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, SAKE ASIAN RESTAURANT INC. d/b/a SAKE ASIAN, KUMO SUSHI 76 INC. d/b/a KUMO, WANG & LIN SAKE ASIAN INC. d/b/a SAKE ASIAN

MASSAPEQUA, SAKURA 618 INC. d/b/a SAKURA, SUSHI YA HIBACHI INC. d/b/a SASA

HIBACHI (collectively, "Corporate Defendants"), and ZHENDONG LIU ("Individual

Defendant" and, together with Corporate Defendants, "Defendants"), and states as follows:

## **INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from

Defendants: (1) unpaid overtime premiums, due to an improper fixed salary policy, (2) liquidated

damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he

and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage,

due to an improper fixed salary policy, (2) unpaid overtime premiums, due to an improper fixed

salary policy, (3) unpaid spread of hours premiums, (4) damages for late payments of wages, (5)

statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and

Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as

required by the Federal Insurance Contribution Act ("FICA").

4.      Moreover, Plaintiff alleges that, in retaining those sums for themselves, Defendants

unjustly enriched themselves at the expense of Plaintiff and Class Members.

## **JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b),

28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.

## **PARTIES**

7.      At all relevant times, Plaintiff HOK BOEN LIONG was a resident of Queens County, New York.

8.      At all relevant times to this action, Defendants have owned and operated the following Japanese/Asian fusion restaurants located on Long Island:

   a.   Sake Asian — 76 Route 109, West Babylon, NY 11704

   b.   Kumo (formerly Sake Asian) — 76 Route 109, West Babylon, NY 11704

   c.   Sake Asian Massapequa — 23 Broadway, Massapequa, NY 11758

   d.   Sakura — 2725 Merrick Road, Bellmore, NY 11710

   e.   Sasa Hibachi — 2119 Broadhollow Road, Farmingdale, NY 11735

(collectively, the "Restaurants").

9.      Corporate Defendant SAKE ASIAN RESTAURANT INC. d/b/a SAKE ASIAN is a domestic business corporation organized under the laws of the State of New York (DOS ID: 4309586, filed October 17, 2012), with a principal place of business located at 76 Route 109, West Babylon, NY 11704, and a principal executive office at 5 East Wood Drive, North Babylon, NY 11703.

10.     Corporate Defendant KUMO SUSHI 76 INC. d/b/a KUMO is a domestic business corporation organized under the laws of the State of New York (DOS ID: 7716635, filed September 22, 2025), with a principal place of business located at 76 Route 109, West Babylon, NY 11704. Kumo is the successor entity to Sake Asian Restaurant Inc. at the same location.

11.     Corporate Defendant WANG & LIN SAKE ASIAN INC. d/b/a SAKE ASIAN MASSAPEQUA is a domestic business corporation organized under the laws of the State of New

York (DOS ID: 7706131, filed September 9, 2025), with a principal place of business located at 23 Broadway, Massapequa, NY 11758.

12. Corporate Defendant SAKURA 618 INC. d/b/a SAKURA is a domestic business corporation organized under the laws of the State of New York (DOS ID: 7014101, filed August 25, 2023), with a principal place of business located at 2725 Merrick Road, Bellmore, NY 11710. Zhendong Liu is listed as CEO.

13. Corporate Defendant SUSHI YA HIBACHI INC. d/b/a SASA HIBACHI is a domestic business corporation organized under the laws of the State of New York (DOS ID: 7413720, filed September 6, 2024), with a principal place of business located at 2119 Broadhollow Road, Farmingdale, NY 11735, and an address for service of process at 2311 Jericho Turnpike, Garden City Park, NY 11040.

14. Individual Defendant ZHENDONG LIU is the owner and principal of the Corporate Defendants. At all relevant times, ZHENDONG LIU exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members, including the power and authority to (i) hire and fire employees, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment. ZHENDONG LIU is an "employer" within the meaning of the FLSA and NYLL.

15. Individual Defendant ZHENDONG LIU exercises functional control over the business and financial operations of the Corporate Defendants.

16. The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

    a. The Restaurants are under the common ownership and control of Individual Defendant ZHENDONG LIU. Zhendong Liu is listed as the CEO and/or registered

4

agent for service of process on the New York Department of State filing for the Restaurants. *See* **Exhibit A.**

b.  The Restaurants share a common business purpose: all are Japanese/Asian fusion restaurants offering substantially identical cuisine, including sushi, hibachi, and all-you-can-eat dining options, to customers in Nassau and Suffolk Counties on Long Island.

c.  Sake Asian and Sakura have identical all-you-can-eat menus—the same dishes, same prices, and same formatting—demonstrating centralized menu planning and unified operational control. *See* **Exhibit B.**

d.  Sake Asian, Sakura, and Sasa Hibachi all ran the same holiday promotions simultaneously, reflecting coordinated marketing and centralized decision-making across the enterprise. *See* **Exhibit C.**

e.  The Sake Asian website lists both the West Babylon and Massapequa locations under a single web presence, demonstrating that these nominally separate entities operate as a unified business. *See* **Exhibit D.**

f.  Sake Asian at 76 Route 109, West Babylon was rebranded as Kumo at the same address. The Kumo website's gallery photos all bear "Sake Asian" branding, demonstrating that Kumo is merely a continuation of Sake Asian under the same ownership and control. *See* **Exhibit E.**

g.  Employees are transferred among the Restaurants on an as-needed basis. Plaintiff himself was transferred from Sake Asian in West Babylon to Sakura in Bellmore for approximately one week to fill in for another employee on vacation, demonstrating interchangeability of workforce and common management.

h.  The Restaurants have a centralized Human Resources and Administration Department that deals with hiring, firing, and administering the Restaurants' workforce. For example, the Restaurants share centralized Human Resources and payroll operations administered and overseen by Individual Defendant ZHENDONG LIU.

i.  All Restaurants are located in close geographic proximity in the Nassau/Suffolk County area of Long Island, New York, facilitating the interchange of employees, supplies, and centralized management. *See* **Exhibit F.**

j.  The Restaurants maintain social media accounts and online profiles that reflect a coordinated marketing strategy and unified brand identity. The Instagram account for the West Babylon Sake Asian location (@sake_asian) advertises the Sake Asian website (sakeasian.com), which lists both the West Babylon and Massapequa locations together under a single web presence. Sakura similarly promotes the same

"Asian Fusion, all you can eat" dining concept offered at the Sake Asian locations. *See* **Exhibit G**.

17.     Accordingly, all Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management, and control.

18.     At all relevant times, Corporate Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

19.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the businesses operated by Defendants.

20.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to cooks, sushi chefs, kitchen helpers, dishwashers, food preparers, servers, bussers, delivery persons, and other similarly situated employees) employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime premiums at the rate of one and one half times the regular rate for work in excess of forty

(40) hours per workweek, due to a fixed salary policy. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to cooks, sushi chefs, kitchen helpers, dishwashers, food preparers, servers, bussers, delivery persons, and other similarly situated employees) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

25.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of the Defendants. The hours assigned and worked, positions held and pay rates for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, because the facts on which the calculation of that

number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class, as each of Defendants' five restaurant locations employs approximately twenty (20) workers.

27.   Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to Defendants' corporate practices of: (i) failing to pay minimum wages, due to an improper fixed salary policy, (ii) failing to pay overtime premiums due to an improper fixed salary policy, (iii) failing to pay spread of hours premiums, (iv) failing to pay wages on a weekly basis as required for manual workers, (v) failing to provide Class Members with proper wage statements with every payment of wages, and (vi) failing to provide proper wage notices to Class Members, at date of hiring and as legally required thereafter, pursuant to NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.   Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy — particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d. Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e. Whether Defendants compensated Plaintiff and Class Members on a fixed salary basis;

f. Whether Defendants properly paid Plaintiff and Class Members overtime premiums for all hours worked in excess of forty (40) each workweek;

g. Whether Defendants paid Plaintiff and Class Members minimum wages for all hours worked;

h. Whether Defendants paid Plaintiff and Class Members spread of hours premiums for shifts worked in excess of ten (10) hours;

i. Whether Defendants paid Plaintiff and Class Members on a weekly basis as required by NYLL § 191(1)(a) for manual workers;

j. Whether Defendants provided proper wage notices, at date of hiring and as required thereafter, to all non-exempt employees per requirements of the NYLL; and

k. Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class Members as required by NYLL.

10

**STATEMENT OF FACTS**

*Plaintiff's Employment Background*

32.    In or around August 2024, Plaintiff was hired by Defendants to work as a cook at Defendants' Sake Asian Restaurant, located at 76 Route 109, West Babylon, NY 11704. During his employment with Defendants, Plaintiff was transferred to work at Defendants' Sakura restaurant located at 2725 Merrick Road, Bellmore, NY 11710 for approximately one (1) week to fill in for another employee who was on vacation. Defendants terminated Plaintiff in or around August 2025.

33.    At all relevant times, Plaintiff was scheduled to work five (5) days per week, consisting of three (3) eleven-hour shifts and two (2) thirteen-hour shifts, for a total of approximately fifty-nine (59) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled to work shifts of similar lengths.

34.    At all relevant times, Defendants compensated Plaintiff at a fixed rate of $135.00 per day, or $675.00 per week, regardless of the number of hours Plaintiff actually worked each day. Plaintiff was paid in cash on a monthly basis.

35.    Throughout his employment, Plaintiff never clocked in or out, was never provided with pay stubs or wage statements, and was never provided with a wage notice at the time of hire or at any time thereafter. Similarly, FLSA Collective Plaintiffs and Class Members never clocked in or out and were also compensated at fixed rates.

*Unpaid Minimum Wages, Due to an Improper Fixed Salary Policy*

36.    At all relevant times, Defendants paid Plaintiff a fixed daily rate of $135.00 per day, totaling $675.00 per week, regardless of the number of hours Plaintiff actually worked each week.

11

37.    At all relevant times, Plaintiff's fixed daily pay averaged out to approximately $11.44 per hour. Defendants compensated FLSA Collective Plaintiffs and Class Members at similarly low rates.

38.    From the start of Plaintiff's employment until December 31, 2024, the applicable minimum wage for employees in Nassau and Suffolk Counties (Long Island) was $16.00 per hour. Beginning January 1, 2025, the applicable minimum wage rose to $16.50.

39.    At all relevant times, Defendants therefore failed to pay Plaintiff and Class Members the applicable minimum wage for each hour worked, in violation of the NYLL.

40.    Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members the applicable minimum wage for all hours worked, due to their fixed salary policy.

*Unpaid Overtime Premiums, Due to an Improper Fixed Salary Policy*

41.    Plaintiff, FLSA Collective Plaintiffs, and Class Members routinely worked in excess of forty (40) hours each workweek.

42.    However, Defendants never paid Plaintiff overtime premiums for his overtime hours, due to his fixed salary. Similarly, Defendants never paid FLSA Collective Plaintiffs, and Class Members overtime premiums for all hours worked over forty (40) each week, due to their fixed salaries.

43.    Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

12

44. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members overtime premiums due to being paid a fixed salary.

*Unpaid Spread of Hours Premiums*

45. At all relevant times, Defendants failed to provide spread of hours premiums to Plaintiff and Class Members for shifts lasting over ten (10) hours.

46. Plaintiff regularly worked shifts exceeding ten (10) hours. Specifically, Plaintiff worked eleven (11) hour shifts on Tuesdays, Thursdays, and Sundays, and thirteen (13) hour shifts on Fridays and Saturdays. On each of these days, Plaintiff's spread of hours—the interval between the beginning and end of his workday—exceeded ten (10) hours.

47. Under 12 N.Y.C.R.R § 146-1.6, when the spread of hours for any day exceeds ten hours, an employee shall receive one additional hour of pay at the basic minimum hourly wage rate. Defendants failed to pay Plaintiff and Class Members this spread of hours premium.

48. Plaintiff was entitled to spread of hours premiums for each day his spread of hours exceeded ten (10) hours—which occurred on all five (5) days of his workweek. Defendants never paid Plaintiff any spread of hours premiums.

49. Class Members who were required to work shifts with a spread of hours in excess of ten (10) hours were similarly not paid any spread of hours premiums.

50. Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums for shifts exceeding ten (10) hours, in violation of the NYLL.

*Late Payments of Wages*

51. At all relevant times, Defendants failed to provide Plaintiff and Class Members with timely payments of wages, in violation of the NYLL.

52. Plaintiff and Class Members are manual workers. Plaintiff and Class Members spent the majority of their workdays performing duties that required sustained physical effort. For Plaintiff, these duties included cooking, lifting heavy pots and pans, standing for extended periods of time, operating commercial kitchen equipment, handling food preparation, and maintaining kitchen cleanliness and organization throughout shifts lasting eleven (11) to thirteen (13) hours. Due to their status as manual workers, Plaintiff and Class Members are entitled to weekly compensation pursuant to NYLL § 191(1)(a).

53. However, at all relevant times, Defendants failed to timely pay Plaintiff and Class Members on a weekly basis. Rather, Defendants made payments on a monthly basis. At times, those monthly payments were an additional two (2) weeks late, leaving Plaintiff and Class Members without wages for four (4) to six (6) week periods.

54. As a result of Defendants' policy and tardiness, Plaintiff and Class Members did not receive their wages within seven (7) calendar days of the end of the week in which those wages were earned, in violation of NYLL § 191(1)(a). This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and other financial obligations.

55. Defendants knowingly and willfully failed to timely compensate Plaintiff and Class Members, in violation of the NYLL.

*WTPA Violations*

56. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA")—incorporated into the NYLL—including, but not limited to, NYLL §§ 195(1) and 195(3).

57.    At all relevant times, Defendants failed to provide Plaintiff and Class Members with the wage notices required at the time of hire and annually thereafter, including but not limited to wage notices reflecting Plaintiff's actual rates of pay, allowances claimed by Defendants (including any tip credit, meal credit, or uniform allowance), the regular pay day, and other information required under NYLL § 195(1). Plaintiff never received any wage notice whatsoever.

58.    At all relevant times, Defendants failed to provide Plaintiff and Class Members with any wage statements whatsoever. Plaintiff was paid entirely in cash without any pay stubs or records of wages paid.

59.    By failing to provide any wage statements to Plaintiff and Class Members, Defendants were able to conceal the true number of hours worked and wages earned, thereby hiding their failure to pay minimum wages, overtime, and spread of hours premiums. Furthermore, Defendants' failure to maintain and provide proper records reduced the employee earnings reported to the IRS, diminishing Plaintiff's and Class Members' Social Security and Medicare benefits.

60.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

61.     New York courts continue to find sufficient standing to support these claims. As one such court stated at summary judgment in *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026):

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that 'Defendants' violations impaired their ability to seek relief due to a lack of information.' More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in Guthrie. Therefore, the Court finds for Plaintiffs on this issue. (internal citations omitted).

62.     Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to provide any wage statements or notices to Plaintiff and Class Members, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were wholly unaware of the fact that they were being underpaid and deprived of overtime, minimum wages, and spread of hours premiums. Had Defendants provided proper wage statements and notices to Plaintiff and Class Members, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

63.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*Breach of Contract / Unjust Enrichment*

16

64.     At all relevant times, Defendants maintained a policy and practice of paying Plaintiff and Class Members entirely in cash. Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members.

65.     Because Defendants paid Plaintiff and Class Members entirely in cash, upon information and belief, Defendants failed to file any W-2 forms on behalf of Plaintiff and Class Members and failed to make any FICA contributions for their wages.

66.     In failing to provide proper W-2 forms, Defendants breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

67.     Further, Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contributions. This came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement, suffer diminished Social Security and Medicare benefits because they did not pay enough into the system.

68.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants.

69.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

<u>**STATEMENT OF CLAIM**</u>

**COUNT I**

<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT**</u>

70.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

73.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.00.

74.     At all relevant times, Defendants engaged in a policy and practice of refusing to properly pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek, due to Defendants' fixed salary policy.

75.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

76.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

77.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

78.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

79.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, due to an improper fixed salary policy, plus an equal amount as liquidated damages.

80.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

81.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

82.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

83.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the applicable minimum wage for all hours worked and proper overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, due to Defendants' improper fixed salary policy.

84.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay spread of hours premiums for shifts in which the spread of hours exceeded ten (10) hours, in violation of 12 N.Y.C.R.R. § 146-1.6.

85.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay their wages on a weekly basis as required by NYLL § 191(1)(a) for manual workers, resulting in payments that were four (4) to six (6) weeks late.

86.    Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually thereafter, per requirements of the New York Labor Law.

87.    Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

88.    Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid minimum wages, unpaid overtime premiums, unpaid spread of hours premiums, damages for unreasonably delayed payments of wages, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to the New York Labor Law.

**COUNT III**

**<u>BREACH OF CONTRACT</u>**

89.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

90.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance ... This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits

20

of the contract ... [T]he duties of good faith and fair dealing ... encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135-136, 773 N.E.2d 496, 500-01 (2002).

91.     When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered into contracts, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

92.     Defendants breached this duty when they decided to pay Plaintiff and Class Members entirely in cash, without filing proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT IV

### UNJUST ENRICHMENT

93.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

94.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

21

95.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contributions. This came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement, suffer diminished Social Security and Medicare benefits because they did not pay enough into the system.

96.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants.

97.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid minimum wages due to Defendants' improper fixed salary policy, due under the NYLL;

22

d.  An award of unpaid overtime premiums due to Defendants' improper fixed salary policy, due under the FLSA and NYLL;

e.  An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours, due under the NYLL;

f.  An award of damages for late payments of wages, including interest and liquidated damages, due to Defendants' willful failure to pay Plaintiff and Class Members on a weekly basis as required under the NYLL;

g.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation for all hours worked, pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

j.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

k.  Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

l.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.  Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

n.  Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

o.  Designation of this action as a class action pursuant to F.R.C.P. 23;

p.  Designation of Plaintiff as a Representative of the Class; and

q.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 23, 2026

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*